UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DUSTIN RELLER, <br><br> Plaintiff, <br><br> vs. <br><br> DONELL WINCH, Administrator Pennington County Jail, in her individual and official capacity; ROBERT YANTIS, Jail Commander at Pennington County Jail, in his individual and official capacity; WADE ANDERSON, Captain at Pennington County Jail, in his individual and official capacity; CAPT. KATHLEEN HOUSTON, Captain at Pennington County Jail, in her individual and official capacity; BRIAN MUELLER, Pennington County Sheriff, in his individual and official capacity; PENNINGTON COUNTY JAIL, in its individual and official capacity; RAPID CITY, in its individual and official capacity; and PENNINGTON COUNTY, in its individual and official capacity, <br><br> Defendants. | 5:24-CV-05029-CCT <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS, MOTION TO ADD DEFENDANTS, MOTION TO SUPPLEMENT, MOTION TO CORRECT CAPTION, AND MOTION FOR SERVICE, DENYING PLAINTIFF'S OTHER VARIOUS MOTIONS, AND 1915A SCREENING** |

Plaintiff, Dustin Reller, an inmate at the Rapid City Community Work Center,[1] filed a pro se civil rights lawsuit under 42 U.S.C. § 1983.[2] Docket 1.

---

[1] At the time Reller filed his complaint, he was a pretrial detainee at the Pennington County Jail. *See* Docket 1; Docket 10-1 at 19. He was later transferred to the South Dakota State Penitentiary, Docket 15, and then transferred to the Rapid City Community Work Center, Docket 16.

[2] In Reller's grievances, he alleges that he will file "1983 bevins actions[.]" Docket 10-1 at 29; *see also id.* at 30. This Court assumes that Reller meant "bevins" as a *Bivens*

Reller moves for leave to proceed in forma pauperis, Docket 2, and filed his prisoner trust account report, Docket 3. Reller also filed various motions and supplements to his complaint. *See* Dockets 5, 6, 7, 8, 9, 10, 12, 13, 14.

## I.    Motion for Leave to Proceed In Forma Pauperis (Docket 2)

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

---

action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). "A *Bivens* claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." *Buford v. Runyon*, 160 F.3d 1199, 1203 n.6 (8th Cir. 1998) (citation omitted). Because Reller does not sue any federal officials, this Court does not analyze his complaint as a *Bivens* action.

Reller's average monthly deposits is $0.00, and his average monthly balance is $0.00. Docket 3. Based on the information regarding Reller's prisoner trust account, the Court grants Reller's motion, Docket 2, for leave to proceed in forma pauperis.

In order to pay his filing fee, Reller must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Reller's institution. Reller remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.    Motion to Add Defendants (Docket 9)

Reller filed a motion to add three defendants: Rapid City, Pennington County Jail, and Pennington County. Docket 9 at 1. Rapid City and Pennington County Jail are already named as defendants sued in their official capacities in Reller's original complaint. *See* Docket 1 at 4. Thus, Reller's request to add individual capacity claims against Rapid City and Pennington County Jail, Docket 9, is granted.

3

Reller also sues employees of the Pennington County Jail in their individual and official capacities. *See* Docket 1 at 3–4. A suit against a public employee in their official capacities is treated as a suit against the employing governmental entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Reller's official capacity claims against employees of the Pennington County Jail are treated as claims against Pennington County. But to the extent that Reller requests to formally name Pennington County as a defendant in its individual and official capacities, Reller's motion to add Pennington County as a defendant, Docket 9, is granted.

### III.    Motion to Supplement (Docket 10)

Reller moves to supplement the record with copies of his grievances. Docket 10 at 1. Federal Rule of Civil Procedure 15(d) states that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Reller's supplement adds facts that occurred after his complaint was filed. Thus, Reller's motion to supplement his complaint, Docket 10, is granted, and this Court will consider the facts included in Reller's supplement when screening his complaint.

### IV.    Motion to Correct Caption (Dockets 13 and 14)

Reller requests to correct the spelling in the caption because he has become aware that the correct spelling of the name for defendant Donell Winch is Welch. Docket 13 at 1; Docket 14. The grievance responses generated by the

jail indicate that the defendant's name is Donell Welch. *See generally* Docket

13. Reller's motions to correct the spelling of the defendant's name, Dockets 13

and 14, are granted. This Court will refer to defendant by the corrected spelling

of her name, Donell Welch, throughout this order.

## V.    1915A Screening

### A.    Factual Background as Alleged in Reller's Complaint

Reller claims that Rapid City, Pennington County, Pennington County

Jail, Jail Administrator Donell Welch, Jail Commander Robert Yantis, Jail

Captain Wade Anderson, Jail Captain Kathleen Houston, and Pennington

County Sheriff Brian Mueller violated his rights. *See generally* Docket 1.

When Reller was housed as a pretrial detainee at the Pennington County

Jail, he was proceeding pro se in his state criminal case. Docket 10-1 at 2;

Docket 13 at 29, 33. He submitted multiple requests to jail staff for copies of

his legal documents. *See* Docket 10-1 at 4, 6, 12, 14, 16–17, 29–30, 32–36, 38–

43, 51; Docket 13 at 2, 4, 6, 8–10, 12, 14–15, 17, 19, 21–22, 24, 26, 29, 31,

33, 35, 37, 39, 41. However, Welch, Yantis, Anderson, Houston, and Mueller

denied his requests or sent back his legal documents because they were

generally blank legal forms, which were documents not capable of being copied

according to Pennington County Jail policy. Docket 1 at 6, 9; Docket 10-1 at

13, 15, 33, 36, 39, 45; Docket 13 at 3, 5, 9, 18, 20, 22–23, 27, 34, 36, 38; *see

also* Docket 6 at 1 (claiming that defendants, when denying his requests for

legal copies, have misquoted and misapplied Pennington County Jail policy

page 15, which is submitted to the Court as Docket 6-1). *But see* Docket 13 at

3, 25, 28, 40 (including instances when Reller's requests for copies were granted). Reller claims that when jail staff did provide him legal copies, the jail staff would illegally read his legal copies and intentionally impeded his access to the courts. Docket 13 at 1; Docket 14 at 1; *see also* Docket 10-1 at 15, 26, 36, 39–43, 51 (claiming that Reller cannot complete forms before sending them for copy because defendants would see all his private legal defense strategies and confidential legal information); Docket 13 at 2, 8–9, 29 (same).

Reller also alleges that defendants denied him access to his mail. Docket 1 at 3, 9–10; Docket 10-1 at 10, 54. He specifically claims that Welch, Yantis, Anderson, Houston, and Mueller did not allow him to send legal mail to the American Civil Liberties Union (ACLU).[3] Docket 1 at 7; Docket 10-1 at 4, 19–22. However, Yantis and Houston informed Reller that proceeding pro se did not entitle him to self-designate letters as legal mail to exclude them from inspection or to receive free outgoing postage. Docket 10-1 at 3, 17. Yantis stated to Reller that "[t]o provide assistance to inmates in the preparation and filing of meaningful legal papers, [the Pennington County Jail] has chosen to provide a free letter each week if an inmate is indigent (an inmate[']s money account is less than the price of a stamp) and unlimited free letters to the County and Federal courthouses." *Id.* at 3. Reller also was prevented from receiving personal letters and pictures. *Id.* at 54.

---

[3] Reller filed a grievance response that indicates that his letter to the ACLU had eventually been sent. Docket 10-1 at 21.

Reller claims that the law library at the Pennington County Jail was insufficient, and he was denied access to research. *See* Docket 1 at 3; Docket 10-1 at 1–4. The South Dakota Jury Instructions were unavailable online due to a technology error, but Houston and other jail staff reached out to the provider and encouraged Reller to submit a new request if the issues continued. Docket 10-1 at 1–2. Reller also requested that the Pennington County Jail add specific criminal and habeas handbooks to help him prepare for his case, but Yantis informed Reller that "the Pennington County Jail will not be adding law library materials per each inmate[']s request." *Id.* at 2–3; *see also id.* at 8–9, 23–24. Reller claims that in retaliation for filing a civil complaint the defendants have denied him access to a package mailed to him containing two legal books: *The Guide to Prosecutorial Misconduct* and *The Guide to Police Misconduct.* Docket 8 at 1; Docket 10-1 at 55–56. Reller alleges that "this was done out of spite and vindictiveness for the filing of this civil suit." Docket 8 at 1.

Reller alleges that Welch, Yantis, Anderson, Houston, and Mueller violated his right to due process because they overlooked his grievances. Docket 1 at 3–4, 6, 8–10; Docket 10-1 at 5, 12, 19, 24, 27, 29–30, 46. He also alleges that defendants have violated his rights to equal protection. Docket 1 at 9–10; Docket 6 at 1; Docket 10-1 at 47–50, 52–53. He claims that he was treated differently because he was indigent. Docket 10-1 at 47–50, 52–53. Reller claims that defendants' actions have caused irreparable damage in the defense of his criminal case and prolonged his detention. Docket 1 at 6–9.

Reller sues Welch, Yantis, Anderson, Houston, Mueller, Rapid City, Pennington County Jail, and Pennington County in their individual and official capacities. *Id.* at 3–4; Docket 9 at 1. Reller seeks damages of $5,000 from each defendant to discourage the behavior and $40,000 for "irreparable damages to [his] case by denial of [his] rights[.]" Docket 1 at 11; *see also* Docket 8 at 1 (requesting to raise the amount sought of $5,000 from each defendant to $15,000 because of further violations of his rights); Docket 9 at 1 (requesting "$15,000.000" from each added defendant). He also requests that this Court order defendants to be "properly informed as a right to legal copies and legal acess to courts . . . and to reprimand them by making them equally protect prisoners rights and to counsel them on the powers they hold over defendants lifes[.]" Docket 1 at 11 (spelling and grammar errors in original). Reller also appears to request that this Court order that defendants be terminated from their employment. Docket 8 at 1.

## B.    Legal Background

The Court must assume as true all facts well pleaded in the complaint when screening. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation

omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)).

Under 28 U.S.C. § 1915A, the Court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The Court will now screen Reller's complaint under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    Claims Against the Pennington County Jail

Reller sues the Pennington County Jail. Docket 1 at 4; Docket 9 at 1. "[C]ounty jails are not legal entities amenable to suit." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam) (citations omitted); *see also De La Garza v. Kandiyouhi Cnty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam) (holding that county jails and sheriff's departments are not suable entities). Thus, Reller's claims against the Pennington County Jail are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

#### 2.    Claims for Injunctive Relief

Reller's complaint appears to request injunctive relief requiring defendants to be properly informed of inmates' rights to legal copies and to access the courts. Docket 1 at 4. But Reller is no longer housed at the Pennington County Jail. Dockets 15, 16. The Eighth Circuit held that an "inmate's claims for declaratory and injunctive relief are moot when he is transferred to another facility and is no longer subject to alleged unlawful conditions[.]" *Gladson v. Iowa Dep't of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009) (citing *Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482, 482 (8th Cir. 2008) (per curiam)); *see also Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (finding that an inmate's transfer to a new facility weeks before a trial for violation of his First Amendment rights mooted his claims for injunctive relief); *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978) (holding that a prisoner's claims

for injunctive relief for violation of his Fourteenth Amendment rights were moot when plaintiff was transferred to a different penitentiary). Because Reller is no longer housed at the Pennington County Jail, his claims for injunctive relief are moot and are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3.    Claims Against Rapid City

Reller sues Rapid City for denial of his rights to access the courts, due process, and equal protection. Docket 1 at 4, 6–8, 10. However, county jails in South Dakota are overseen by the county, not a city. *See* SDCL § 24-11-2 ("There shall be established and maintained in every county, by authority of the board of county commissioners and at the expense of the county, a jail for the purposes stated in this chapter, except as provided in § 24-11-3.").

Standing is a "threshold question in every federal case, determining the power of the court to entertain suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of a controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Id.* at 498–99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). In order to possess standing to bring a claim in federal court, a plaintiff must show

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Because Pennington County, not the City of Rapid City, oversees the Pennington County Jail, Reller has not alleged an injury fairly traceable to Rapid City. Thus, Reller's claims against Rapid City are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4.     Claims for Money Damages

#### a.     First and Fourteenth Amendments Right to Access the Courts

Liberally construing Reller's complaint, he alleges First and Fourteenth Amendment claims for violation of his right to access the courts. Docket 1. Although "the basis of the constitutional right of access to the courts" is "unsettled[,]" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002), "[t]he Constitution guarantees prisoners a right to access the courts[,]" *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).

To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury because of the defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). To satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated

or was being impeded." *Johnson v. Missouri*, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey*, 518 U.S. at 353). "The right of access to the courts is satisfied if the prisoner has 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (quoting *Lewis*, 518 U.S. at 356); *see also Wolff v. McDonnell*, 418 U.S. 539, 579 (1974) (holding that the right to access to the courts applies in habeas and civil rights contexts).

### (i).    Claims Against Jail Employees

Reller claims that defendants have denied his requests for legal copies, denied him access to his legal mail, and have provided an insufficient legal library. *See supra* at 5–7. He claims that defendants' actions caused irreparable damage in the defense of his criminal case. Docket 1 at 6–9; Docket 8 at 1; Docket 10-1 at 34, 38. Because this Court cannot say at this time that Reller's First and Fourteenth Amendment access to the court claims are wholly without merit, Reller's First and Fourteenth Amendment access to the court claims against Welch, Yantis, Anderson, Houston, and Mueller in their individual capacities for money damages survive § 1915A screening.

### (ii).    Claims Against Pennington County

Reller sues Pennington County for violation of his right to access the courts. Reller also sues Welch, Yantis, Anderson, Houston, and Mueller in their official capacities for money damages. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257

(8th Cir. 2010) (citation omitted). Thus, Reller's claims against Welch, Yantis, Anderson, Houston, and Mueller in their official capacities for money damages are equivalent to claims against Pennington County.

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A county or local government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Id.* A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe ex rel. Doe v. Sch. Dist.*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.*; *see also Doe*, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" *Brewington v. Keener,*

902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)).

Here, Reller claims that his legal copies were denied because they were not capable of being printed in accordance with Pennington County Jail policy. He claims that if it is the Pennington County Jail's policy to not make copies of blank forms, then the policy violates his right. Docket 10-1 at 39–42, 46; *see also* Docket 6-1 (excerpts from the policy). He also alleges that Pennington County had a policy about sending legal mail and limits on legal postage and have provided an insufficient legal library. *See supra* at 5–7. He claims that defendants' actions caused irreparable damage in the defense of his criminal case. Docket 1 at 6–9; Docket 8 at 1. This Court cannot determine at this time whether Reller's claims are wholly without merit. Thus, Reller has alleged sufficient facts for his First and Fourteenth Amendment access to the courts claims against Welch, Yantis, Anderson, Houston, and Mueller in their official capacities for money damages and against Pennington County in its individual and official capacity for money damages to survive § 1915A screening.

### b.      First Amendment Right to Send and Receive Mail

Inmates retain the First Amendment "right to send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (citations omitted). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights,

the regulation is valid if it is reasonably related to legitimate penological

interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Eighth Circuit Court of

Appeals has applied *Turner*'s four-factor test to prison regulations regarding

mail:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Thongvanh*, 17 F.3d at 259. This standard applies to both incoming and

outgoing mail. *Id.* (citation omitted).

### (i).    Claims Against Jail Employees

Reller claims defendants denied him access to his mail. Docket 1 at 3, 7,

9–10; Docket 10-1 at 4, 10, 19–22, 54–55. This Court cannot say at this stage

that Reller's First Amendment right to send and receive mail claims are wholly

without merit. Reller has alleged that each defendant was personally involved

with the violation of his right. Docket 1 at 3, 7. Thus, Reller's First Amendment

right to send and receive mail claims against Welch, Yantis, Anderson,

Houston, and Mueller in their individual capacities for money damages survive

§ 1915A screening.

### (ii).    Claims Against Pennington County

Reller also sues Welch, Yantis, Anderson, Houston, and Mueller in their

official capacities and Pennington County in its individual and official

capacities for violation of his right to send and receive mail. Docket 1 at 3, 7.

Yantis informed Reller that the Pennington County Jail has chosen to provide one free letter each week to an indigent inmate and unlimited free letters to the courthouses. Docket 10-1 at 3. Reller's filings could be liberally construed to allege that his right to send and receive mail was violated because of a Pennington County Jail policy or custom. Thus, Reller's First Amendment right to send and receive mail claims against Welch, Yantis, Anderson, Houston, and Mueller in their official capacities and Pennington County in its individual and official capacities for money damages survive § 1915A screening.

### c.    First Amendment Retaliation

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels*, 382 F.3d at 876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

### (i).    Claims Against Jail Employees

Reller alleges that defendants Welch, Yantis, Anderson, Houston, and Mueller retaliated against him for filing a civil lawsuit against them. Docket 8

at 1. Reller claims that defendants denied him legal books because he filed this lawsuit. *Id.*; Docket 10-1 at 55–56. He also alleges that defendants retaliated against him by denying him legal copies because he attempted to enforce his rights. Docket 10-1 at 47–49. This Court cannot say at this time that Reller's First Amendment claim is wholly without merit. Thus, Reller's First Amendment retaliation claim against Welch, Yantis, Anderson, Houston, and Mueller in their individual capacities for money damages survives § 1915A screening.

### (ii).    Claims Against Pennington County

Reller does not appear to allege Pennington County had a policy or custom to retaliate against inmates for exercising their rights. Thus, Reller's First Amendment retaliation claim against Welch, Yantis, Anderson, Houston, and Mueller in their official capacities for money damages and against Pennington County in its individual and official capacities are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

### d.    Fourth Amendment

Reller alleges that defendants violated his rights guaranteed under the Fourth Amendment. Docket 10-1 at 46. The Fourth Amendment provides

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Reller does not specify which section of the Fourth Amendment his claim falls under. *See* Docket 10-1 at 46. This Court construes Reller's filings to allege a claim for unreasonable search of his legal papers.

The Eighth Circuit has indicated that "the extent of a pretrial detainee's fourth amendment rights while in jail is not settled." *United States v. Surridge*, 687 F.2d 250, 256 (8th Cir. 1982). Later in *United States v. Hogan*, the Eighth Circuit held that a pretrial detainee "had no legitimate expectation of privacy to the papers in his cell." 539 F.3d 916, 924 (8th Cir. 2008). Some courts have held that prisoners do not have a reasonable expectation of privacy when they voluntarily give legal documents for copying or when those documents will be filed with the court. *See Powell v. Laurie*, No. 17-3031-SAC-DJW, 2017 WL 2876873, at *4 (D. Kan. July 6, 2017); *Christensen v. Braithwaite*, No. 2:17-CV-1123 CW, 2021 WL 4502837, at *5 n.7 (D. Utah Oct. 1, 2021); *Frazier v. Zavaras*, No. 10-cv-02534-CMA-KMT, 2011 WL 4537001, at *6–7 (D. Col. Sept. 30, 2011).

### (i).    Claims Against Jail Employees

Here, Reller claims that jail staff illegally read his legal copies. Docket 13 at 1; Docket 14. Although it appears that the legal copies that defendants allegedly read were documents likely to be filed with the state court and were given to the staff for copying, *see* Docket 10-1 at 26, this Court cannot determine at this time whether Reller's claims are wholly without merit. Thus, Reller's Fourth Amendment claims against Welch, Yantis, Anderson, Houston,

and Mueller in their individual capacities for money damages survive § 1915A screening by a thin margin.

### (ii).    Claims Against Pennington County

Reller's filings could be liberally construed to allege that Pennington County Jail had a policy that violated his Fourth Amendment rights and defendants acted under the policy. Docket 10-1 at 46. Because this Court cannot determine that Reller's claim is wholly without merit, Reller's Fourth Amendment claim against Welch, Yantis, Anderson, Houston, and Mueller in their official capacities for money damages and against Pennington County in its individual and official capacities for money damages survive § 1915A screening by a very thin margin.

### e.    Fifth Amendment

In a grievance filed in his supplement, Reller alleges that defendants violated his rights under the Fifth Amendment, but he does not allege how defendants violated his rights under the Fifth Amendment. Docket 10-1 at 46. If this Court liberally construed Reller's filings to allege a due process claim under the Fifth Amendment, his claim would fail because he has not alleged any claims against federal defendants. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"). Thus, Reller's claim under the Fifth Amendment is dismissed

20

without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

### f.    Sixth Amendment

Reller claims that defendants' actions violated his rights under the Sixth Amendment, but he does not explain how the Sixth Amendment is implicated. Docket 10-1 at 46. The Sixth Amendment states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

Reller claims that the conduct that supposedly violated his Sixth Amendment right was that defendants did not provide him copies of blank legal forms, which caused him to suffer "irreprable [sic] damage to the access of courts of [his] motions[.]" *Id.* He does not allege which clause of the Sixth Amendment his claims fall under, and this Court does not find that the denial of copies of blank legal forms without more is sufficient to state a claim under any provisions of the Sixth Amendment. *Id.* Thus, Reller's Sixth Amendment claims for defendants' failure to provide copies of blank legal forms are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

g.      **Eighth Amendment Cruel and Unusual Punishment**

Reller alleges that defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment. Docket 10 at 1; Docket 10-1 at 6, 47–50. A pretrial detainee's claims for cruel and unusual punishment are analyzed under the Fourteenth Amendment, rather than the Eighth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). This Court will analyze Reller's claims for excessive force under the Fourteenth Amendment. Thus, Reller's Eighth Amendment claims for cruel and unusual punishment are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

h.      **Fourteenth Amendment Cruel and Unusual Punishment**

Liberally construing Reller's complaint, he alleges claims under the Fourteenth Amendment for cruel and unusual punishment. Docket 10 at 1; Docket 10-1 at 6, 47–50. A pretrial detainee's conditions of confinement claims are analyzed under the Fourteenth Amendment's due process protections. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). "[T]he proper inquiry is whether those conditions amount to punishment of the detainee." *Id.* at 535. In *Bell*, the United States Supreme Court held that:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is

22

> assignable for it, and whether it appears excessive in relation to
> the alternative purpose assigned [to it]."

*Id.* at 538–39 (alteration in original) (internal citation and footnote omitted)
(quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)). If a
condition is "reasonably related to a legitimate governmental objective, it does
not, without more, amount to 'punishment.'" *Id.* at 539 (footnote omitted). But
if the condition is arbitrary or purposeless, the court can infer that the
condition is a "punishment that may not constitutionally be inflicted upon
detainees[.]" *Id.* "The Government has legitimate interests that stem from its
need to manage the facility in which the individual is detained." *Smith v.
Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (citing *Bell*, 441 U.S. at 540).

### (i).    Claims Against Jail Employees

Reller claims that defendants "punish[ed] [him] cruel[ly] and unusually
by making [him] write [his] motions 5x instead of simply copying them all of
this is because [he is] indigent." Docket 10 at 1; *see also* Docket 10-1 at 6, 47–
50. He alleges that the intention was to punish him. Docket 10 at 1. He claims
that Welch, Yantis, Anderson, Houston, and Miller were engaged in denying
copies. Docket 1 at 6. Reller's Fourteenth Amendment conditions of
confinement claims against Welch, Yantis, Anderson, Houston, and Mueller in
their individual capacities for money damages survive § 1915A screening.

### (ii).    Claims Against Pennington County

Reller claims that Pennington County had a policy that violated his due
process rights related to copying legal documents. Docket 6 at 1; Docket 6-1;

Docket 10 at 1; Docket 10-1 at 6, 47–50; Docket 13 at 31. Thus, Reller's Fourteenth Amendment conditions of confinement claim against Welch, Yantis, Anderson, Houston, and Mueller in their official capacities for money damages and against Pennington County in its individual and official capacities for money damages survive § 1915A screening.

### i.    Fourteenth Amendment Grievance Process

Reller alleges a due process claim under the Fourteenth Amendment because defendants "fail[ed] to redress grievances properly[.]" Docket 1 at 8. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or state-mandated procedures is a violation of the Constitution." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Id.* (alteration in original) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also King v. Houston*, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (explaining that, under *Buckley*, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983").

Reller's claim that defendants failed to properly redress his grievances does not alone state a claim for violation of his Fourteenth Amendment rights. Thus, Reller's Fourteenth Amendment due process claim for failure to properly

respond to his grievances is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### j.    Fourteenth Amendment Equal Protection

Reller claims that defendants violated his Fourteenth Amendment right to equal protection. Docket 1 at 9–10; Docket 6 at 1; Docket 10-1 at 19.

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999)). The Eighth Circuit Court of Appeals has explained that for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (citations and internal quotation omitted).

The Supreme Court has also recognized a class-of-one equal protection claim in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Eighth Circuit has applied the class-of-one analysis to a prison setting. *Nolan v. Thompson*, 521 F.3d 983, 989–90 (8th Cir. 2008). In *Nolan,* because the plaintiff had not alleged he was a member of a protected class or that his fundamental rights had been violated, the court found he had to show that defendants "systematically and 'intentionally treated [him] differently from

25

others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* at 989–90 (quoting *Olech*, 528 U.S. at 564). The plaintiff had to "provide a specific and detailed account of the nature of the preferred treatment of the favored class[.]" *Id.* at 990 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214–15 (10th Cir. 2004)).

Reller also alleges that he has been denied his "indigent trial tools" under *Britt v. North Carolina*, 404 U.S. 226 (1971). Docket 10 at 1; Docket 10-1 at 47–50. In *Britt,* the Supreme Court noted that "Griffin v. Illinois [351 U.S. 12 (1956)] and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." 404 U.S. at 227.

### (i).    Claims Against Jail Employees

Reller claims that defendants Welch, Yantis, Anderson, Houston, and Mueller denied him legal copies because he was indigent and chose to represent himself. Docket 10 at 1. He alleges that all defendants were involved with the denial of his legal copies. Docket 1 at 9–10. Although Reller's filings indicate that his requests for copies may have been denied because he requested copies of blank legal forms instead of because he was indigent, *see* Docket 10-1 at 39–42, 46, he has alleged sufficient facts for his Fourteenth Amendment equal protection claim to survive screening. Thus, Reller's Fourteenth Amendment equal protection claims against Welch, Yantis,

Anderson, Houston, and Mueller in their individual capacities for money damages survive § 1915A screening.

### (ii).    Claims Against Pennington County

Reller claims that his requests for copies were denied in accordance with an unconstitutional Pennington County Jail policy. Docket 10-1 at 33, 39–42, 43–45. Thus, Reller's Fourteenth Amendment equal protection claims against Welch, Yantis, Anderson, Houston, and Mueller in their official capacities for money damages and against Pennington County in its individual and official capacities for money damages survive § 1915A screening.

### k.    18 U.S.C. §§ 241 and 242

In Reller's grievances, he alleges that defendants' actions violate his rights under 18 U.S.C. §§ 241 and 242. Docket 10-1 at 14. Section 241 prohibits conspiracy to violate a right or privileged guaranteed by the Constitution or federal law. 18 U.S.C. § 241. Section 242 prohibits deprivation of rights under the color of law. 18 U.S.C. § 242. Sections 241 and 242 are federal criminal statutes, which do not provide a private right of action. *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998). Thus, Reller's claims under 18 U.S.C. §§ 241 and 242 are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### l.    Conspiracy

Even if this Court were to liberally construe Reller's claim under § 241 as a civil conspiracy claim under § 1983, he would fail to state a claim. To plead a

civil conspiracy under § 1983, Reller must show "(1) two or more persons;
(2) an object to be accomplished; (3) a meeting of the minds on the object or
course of action to be taken; (4) the commission of one or more unlawful overt
acts; and (5) damages as the proximate result of the conspiracy." *Livers v.
Schenck*, 700 F.3d 340, 360–61 (8th Cir. 2012) (citation omitted). "The plaintiff
is additionally required to prove a deprivation of a constitutional right or
privilege in order to prevail on a § 1983 civil conspiracy claim." *White v.
McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd*, 191 F.3d
953, 957 (8th Cir. 1999)). Although a plaintiff can use circumstantial evidence
to show a conspiracy, a plaintiff bringing a § 1983 conspiracy claim must allege
"specific facts tending to show" that the defendants reached an agreement or
had a meeting of the minds to deprive the plaintiff of a constitutional right. *See
Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010).

Here, Reller does not sufficiently allege that defendants reached an
agreement or had a meeting of the minds to deprive him of his constitutional
rights. *See* Docket 10-1 at 15. Thus, Reller's § 1983 conspiracy claim is
dismissed without prejudice for failure to state a claim upon which relief may
be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### m.    Negligence

Reller alleges that defendants acted with negligence. Docket 6 at 1;
Docket 10-1 at 38, 44–46; Docket 13 at 31. Negligence is not actionable under
§ 1983, *Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) (citation
omitted), but negligence can be actionable under state law. A district court has

"supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Because these claims are part of the same case or controversy, this Court exercises supplemental jurisdiction over Reller's state-law negligence claims.

Under South Dakota law, "[i]n order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." *Hanson v. Big Stone Therapies, Inc.*, 916 N.W.2d 151, 158 (S.D. 2018) (quoting *Hamilton v. Sommers*, 2014 SD 76, 855 N.W.2d 855, 861 (S.D. 2014)). An employer may be vicariously liable for the negligent acts of their employees under respondeat superior. *Cameron v. Osler*, 930 N.W.2d 661, 666 (S.D. 2019).

Reller's filings could be liberally construed to allege that a Pennington County Jail policy imposed a duty on defendants to provide him copies of his legal documents, which he claims that defendants failed to do. Docket 6; Docket 6-1. Because of defendants' failure to provide copies, he claims that his criminal case was irreparably injured. Docket 10-1 at 34, 39, 44–45; Docket 13 at 9, 29, 31. Thus, Reller has alleged sufficient facts for his state-law negligence claim against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities only money damages to survive § 1915A screening.

29

## VI.    Motions for a Subpoena (Dockets 6-2 and 8)

Reller requests a subpoena of his grievances filed with the Pennington County Jail. Docket 6-2 at 1; Docket 8 at 1. However, Reller's requests are premature. His complaint is just now being screened, he has yet to serve defendants, and defendants have not answered or otherwise responded to Reller's complaint. Thus, Reller's motions for a subpoena, Dockets 6-2 and 8, are denied as premature.[4]

## VII.    Motion for Copies (Docket 7)

Reller requests that this Court send him two copies of his motions and the orders or other filings in this case. Docket 7 at 1. This Court construes Reller's request as a motion for copies of the case record. The District of South Dakota's fee schedule imposes a cost of $0.50 per page for copies of any record. If Reller wishes to receive a copy of any filings in his case, he should file a request with the Clerk of Court indicating which dockets he requests copies as well as include the required payment for the requested copies. Thus, Reller's motion for copies, Docket 7, is denied.

## VIII.    Motion for a Temporary Restraining Order (Docket 9)

Reller requests that the Court "move to file a temporary restraining order" and asks "the court to give incuntive [sic] relief order in the form of ordering the Jail to grant [him] access to legal copies and ordering the Jail to

---

[4] Reller later filed with this Court nearly one-hundred pages of copies of grievances and requests for legal copies. *See* Docket 10-1; Docket 13 at 2–42. Thus, it is unclear if he has already received the requested material. *See* Docket 13 at 24–25.

give [him] access to the legal materials [he] need[s] in defense of [his] criminal case[.]" Docket 9 at 1.

When ruling on a motion for preliminary injunctive relief, the court considers "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). But this Court need not analyze these factors because Reller is no longer detained at the Pennington County Jail. *See* Dockets 15, 16. An inmate's claims for injunctive relief are moot when he has been released or transferred from the institution and is no longer subject to those conditions. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *Martin*, 780 F.2d at 1337. Thus, Reller's motion for a temporary restraining order, Docket 9, is denied as moot.

## IX.    Motion for Settlement Conference (Docket 5)

Reller requests a settlement conference. Docket 5 at 2. While Reller is certainly allowed to attempt to settle his case with defendants on his own, this Court cannot order the parties to conduct a settlement conference before defendants have even been served. Thus, Reller's motion for a settlement conference, Docket 5, is denied.

## X.    Motion for Service (Docket 12)

Reller requests that this Court order the United States Marshals Service to serve the defendants. Docket 12 at 1. Federal Rule of Civil Procedure 4

provides that "the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915[.]" Fed. R. Civ. P. 4(c)(3). Because Reller has been granted leave to proceed in forma pauperis and several of his claims survived § 1915A screening, he is entitled to service by the United States Marshals Service. Thus, Reller's request for service by the United States Marshals Service, Docket 12, is granted.

Thus, it is ORDERED:

1.     That Reller's motion for leave to proceed in forma pauperis, Docket 2, is granted.

2.     That the Clerk of Court will send a copy of this order to the appropriate financial officer at Reller's institution.

3.     That the institution having custody of Reller is directed that whenever the amount in Reller's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Reller's trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid.

4.     That Reller's request to add individual capacity claims against Rapid City and Pennington County Jail, Docket 9, is granted.

5.     That Reller's request to formally name Pennington County as a defendant in its individual and official capacities, Docket 9, is granted.

6.     That Reller's motion to supplement his complaint, Docket 10, is granted.

7.     That Reller's motions to correct the caption spelling of defendant's name from Donell Winch to Donell Welch, Dockets 13 and 14, are granted.

8.     That Reller's claims against the Pennington County Jail are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

9.     That Reller's claims for injunctive relief are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

10.    That Reller's claims against Rapid City are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

11.    That Reller's First and Fourteenth Amendment access to the court claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities both for only money damages survive § 1915A screening.

12.    That Reller's First Amendment right to send and receive mail claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities both for only money damages survive § 1915A screening.

13. That Reller's First Amendment retaliation claim against Welch, Yantis, Anderson, Houston, and Mueller in their individual capacities for money damages survives § 1915A screening.

14. That Reller's Fourth Amendment claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities both for only money damages survive § 1915A screening.

15. That Reller's Fourteenth Amendment conditions of confinement claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities both for only money damages survive § 1915A screening.

16. That Reller's Fourteenth Amendment equal protection claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities both for only money damages survive § 1915A screening.

17. That Reller's state-law negligence claim against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities both for only money damages survives § 1915A screening.

18. That Reller's remaining claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

19. That Reller's motions for a subpoena, Dockets 6-2 and 8, are denied as premature.

20. That Reller's motion for copies, Docket 7, is denied.

21. That Reller's motion for a temporary restraining order, Docket 9, is denied as moot.

22. That Reller's motion for a settlement conference, Docket 5, is denied.

23. That Reller's request for service by the United States Marshals Service, Docket 12, is granted.

24. That the Clerk of Court shall send blank summons forms and Marshall Service Forms (Form USM-285) to Reller so that he may cause the complaint to be served upon defendants Welch, Yantis, Anderson, Houston, Mueller, and Pennington County.

25. That Reller shall complete and send the Clerk of Court a separate summons and USM-285 form for each defendant within **thirty days from the date of this Court's screening order**. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

26. That the United States Marshal Service shall serve the completed summons, together with a copy of the complaint (Docket 1), the supplements to the complaint that allege additional facts (Dockets 6, 8, 10, 10-1, and 13), and this order, upon defendants Welch, Yantis, Anderson, Houston, Mueller, and Pennington County.

27. That defendants Welch, Yantis, Anderson, Houston, Mueller, and Pennington County will serve and file an answer or responsive

pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Federal Rule of Civil Procedure 12(a)(2) or (3).

28.     That Reller will keep the Court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the Court's Local Rules while this case is pending.

Dated March 26, 2025.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE