UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DUSTIN RELLER,<br><br>    Plaintiff,<br><br>  vs.<br><br>DONELL WELCH, Administrator Pennington County Jail, in her individual and official capacity; ROBERT YANTIS, Jail Commander at Pennington County Jail, in his individual and official capacity; WADE ANDERSON, Captain at Pennington County Jail, in his individual and official capacity; CAPT. KATHLEEN HOUSTON, Captain at Pennington County Jail, in her individual and official capacity; BRIAN MUELLER, Pennington County Sheriff, in his individual and official capacity; and PENNINGTON COUNTY, in its individual and official capacity,<br><br>    Defendants. | 5:24-CV-05029-CCT<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM** |

Plaintiff, Dustin Reller, who is now an inmate at the South Dakota State Penitentiary, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983 alleging claims arising out of the time he was incarcerated at the Pennington County Jail as a pretrial detainee. Docket 1; Docket 10-1 at 19; Docket 34 at 1. The Court granted Reller's motion for leave to proceed in forma pauperis and screened his complaint in accordance with 28 U.S.C. § 1915A. Docket 17. Seven claims survived screening. *Id.* at 33–34. After defendants were served,

they filed a Rule 12(b)(6) motion to dismiss all the claims that survived screening. Docket 24.  Reller opposes defendants' motion. Docket 34.

## FACTUAL BACKGROUND

When considering a Rule 12(b)(6) motion to dismiss, a court generally confines its review to the facts alleged in the complaint and any attachments to complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697–98 n.4 (8th Cir. 2003) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)). Additionally, a court may consider "materials embraced by the complaint includ[ing] documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation modified). In addition to Reller's complaint, Docket 1, the Court will consider the additional documents Reller filed and which the Court considered when screening his complaint: Docket 6, Docket 6-1, Docket 8, Docket 10-1, Docket 13, and Docket 14.

When considering a Rule 12(b)(6) motion, a court may also take judicial notice of its own records and files as well as other matters of public record. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981); *see also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). In accordance with defendants' request, the Court takes judicial

2

notice of Reller's state criminal record, *South Dakota v. Reller*, 51 CRI24-000161, and his federal habeas corpus record, *Reller v. Pennington County*, 5:24-CV-05047-CBK (D.S.D.).

Defendants submitted an affidavit in support of their motion to dismiss. Docket 26. This affidavit includes six exhibits referenced in defendants' memorandum in support of their motion to dismiss. *Id.*; Docket 25. Because exhibits 1 through 5 are documents that appear in Reller's state criminal record and which this Court has taken judicial notice of, it is appropriate to consider these exhibits without converting the motion to dismiss into a motion for summary judgment. Exhibit 6, however, contains materials not embraced by Reller's pleadings. Thus, the Court will not consider Docket 26-6 when considering defendants' Rule 12(b)(6) motion.

Reller claims that Pennington County Jail Administrator Donell Welch, Jail Commander Robert Yantis, Jail Captain Wade Anderson, Jail Captain Kathleen Houston, and Pennington County Sheriff Brian Mueller violated his rights. He also asserts claims against Pennington County. *See generally* Docket 1.

Reller alleges that when he was housed as a pretrial detainee at the Pennington County Jail, he was proceeding pro se in his state criminal case. Docket 10-1 at 2; Docket 13 at 29, 33. But the state criminal record includes orders appointing counsel. Docket 26-1; Docket 26-2. According to the state criminal record, counsel appeared on Reller's behalf during the change of plea and sentencing hearings. Docket 26-3.

While housed at Pennington County Jail, Reller submitted multiple requests to jail staff for copies of legal documents. *See* Docket 10-1 at 4, 6, 12, 14, 16–17, 29–30, 32–36, 38–43, 51; Docket 13 at 2, 4, 6, 8–10, 12, 14–15, 17, 19, 21–22, 24, 26, 29, 31, 33, 35, 37, 39, 41. However, Welch, Yantis, Anderson, Houston, and Mueller denied his requests or sent back his legal documents because they were generally blank legal forms, which were documents not capable of being copied according to Pennington County Jail policy. Docket 1 at 6, 9; Docket 10-1 at 13, 15, 33, 36, 39, 45; Docket 13 at 3, 5, 9, 18, 20, 22–23, 27, 34, 36, 38; *see also* Docket 6 at 1 (claiming that defendants, when denying his requests for legal copies, misquoted and misapplied Pennington County Jail policy page 15, which is submitted to the Court as Docket 6-1). *But see* Docket 13 at 3, 25, 28, 40 (including instances when Reller's requests for copies were granted). Reller alleges that some of the "blank" forms defendants refused to copy had been "modified . . . slightly for [his] purposes[.]" Docket 10-1 at 14.

Reller claims that when jail staff did provide him legal copies, the jail staff read his legal copies and intentionally impeded his access to the courts. Docket 13 at 1; Docket 14 at 1; *see also* Docket 10-1 at 15, 26, 36, 39–43, 51 (claiming that Reller cannot complete forms before sending them for copying because defendants would see all his private legal defense strategies and confidential legal information); Docket 13 at 2, 8–9, 29 (same).

Reller also alleges that defendants denied him access to mail, including legal mail. Docket 1 at 3, 9–10; Docket 10-1 at 10, 54. He specifically claims

4

that Welch, Yantis, Anderson, Houston, and Mueller did not allow him to send legal mail to the American Civil Liberties Union (ACLU).[1] Docket 1 at 7; Docket 10-1 at 4, 19–22. Yantis and Houston informed Reller that proceeding pro se did not entitle him to self-designate letters as legal mail to exclude them from inspection or to receive free outgoing postage. Docket 10-1 at 3, 17. Because the ACLU is a legal entity that helps people retain attorneys, Reller contends that his letter to the ACLU should have been considered legal mail. *Id.* at 20. Yantis stated to Reller that "[t]o provide assistance to inmates in the preparation and filing of meaningful legal papers, [the Pennington County Jail] has chosen to provide a free letter each week if an inmate is indigent (an inmate[']s money account is less than the price of a stamp) and unlimited free letters to the County and Federal courthouses." *Id.* at 3. Reller claims he also was prevented from receiving personal letters and pictures. *Id.* at 54.

Reller claims that the law library at the Pennington County Jail was insufficient, and he was denied access to research. *See* Docket 1 at 3; Docket 10-1 at 1–4. The South Dakota Jury Instructions were unavailable online due to a technology error, but Houston and other jail staff reached out to the provider and encouraged Reller to submit a new request if the issues continued. Docket 10-1 at 1–2. Reller also requested that the Pennington County Jail add specific criminal and habeas handbooks to help him prepare for his case, but Yantis informed Reller that "the Pennington County Jail will

---

[1] Reller filed a grievance response that indicates that his letter to the ACLU had eventually been sent. Docket 10-1 at 21.

5

not be adding law library materials per each inmate[']s request." *Id.* at 2–3; *see also id.* at 8–9, 23–24. Reller claims defendants denied him access to a package mailed to him containing two legal books: *The Guide to Prosecutorial Misconduct* and *The Guide to Police Misconduct.* Docket 8 at 1; Docket 10-1 at 55–56. Reller alleges that "this was done out of spite and vindictiveness for the filing of this civil suit." Docket 8 at 1.

Reller alleges that defendants have violated his rights to equal protection. Docket 1 at 9–10; Docket 6 at 1; Docket 10-1 at 47–50, 52–53. He claims that he was treated differently because he was indigent. Docket 10-1 at 47–50, 52–53. Reller claims that defendants' actions have caused irreparable damage in the defense of his criminal case and prolonged his detention. Docket 1 at 6–9.

## I.    Analysis

### A.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). When considering a Rule 12(b)(6) motion, the facts alleged in the complaint must be considered true, and all inferences must be drawn in favor of Reller, the nonmoving party. *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (citing *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 464 (8th Cir. 2002)). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "factual content that allows

6

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' . . . a claim must be dismissed[.]" *Neitzke*, 490 U.S at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

A pro se complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation and internal quotation marks omitted). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Soloman v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (internal quotation marks omitted).

### B.    Access-to-the-Courts Claim

Reller's access-to-the-court claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities for money damages survived § 1915A screening. Docket 17 at 12–15, 34. Specifically, Reller alleges defendants denied his requests for legal copies, denied him access to legal mail, and did not provide a sufficient law library. *See generally* Docket 1; Docket 6; Docket 6-1; Docket 8; Docket 10-1; Docket 13; Docket 14. Defendants contend that Reller fails to state a viable access-to-the-courts claim because he was represented by counsel throughout his state criminal case. Docket 25 at 7–8. Defendants also contend that prisoners are

not entitled to unlimited free photocopies or unlimited free postage and that Reller did not suffer an "actual injury" because of the alleged denial of access to the courts. *Id.* at 7–10.

Although "the basis of the constitutional right of access to the courts" is "unsettled[,]" *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), "[t]he Constitution guarantees prisoners a right to access the courts[,]" *White v. Kautzky,* 494 F.3d 677, 679 (8th Cir. 2007). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977).

To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury because of the defendants' actions. *Lewis v. Casey,* 518 U.S. 343, 349 (1996). To satisfy the actual injury requirement, "a plaintiff must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" *Johnson v. Missouri,* 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting *Casey,* 518 U.S. at 353).

As defendants argue, when a prisoner is represented by counsel, limited access to legal research materials or legal supplies does not violate the prisoner's right to access the courts. *See, e.g., Entzi v. Redmann,* 485 F.3d 998, 1005 (8th Cir. 2007). While Reller's state criminal record includes orders appointing counsel and reflects that counsel appeared on Reller's behalf during the change of plea and sentencing hearings, Reller alleges that he was

8

representing himself in his state criminal case and provided exhibits that seem to indicate that defendants believed that he was representing himself. *See, e.g.,* Docket 10-1 at 3 ("You retain no special privileges if you decide to represent yourself in the Pennington County Jail. . . . [a]s a pro se litigant . . . "). Defendants concede that Reller submitted pro se filings in his state criminal case. Docket 25 at 4; Docket 26-4; Docket 26-5. Thus, this Court, for purposes of this motion to dismiss, must accept Reller's allegation that he was representing himself in his state criminal case as true.

"Pre-trial detainees have a right to meaningful access to courts and to judicial process." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1052 (8th Cir. 1989) (citing *Bounds*, 430 U.S. at 822). But some circuits have held that criminal defendants who elect to represent themselves after foregoing an offer of court-appointed counsel cannot file a § 1983 action alleging denial of the right to access the courts to prepare a *pro se* defense in a criminal trial. *See, e.g.,* *United States v. Kincaide*, 145 F.3d 771, 778 (6th Cir. 1998); *White v. Longino*, 428 F. App'x 491 (5th Cir. 2011) (per curiam). In other words, the offer of court-appointed counsel to represent a defendant satisfies the obligation to provide a criminal defendant with legal assistance. *United States ex rel. George v. Lane*, 718 F.2d 226, 231 (7th Cir. 1983); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (per curiam) (holding that a petitioner who elected to proceed *pro se* on state court charges could not obtain habeas relief because there is no clearly established right under federal law to access a law library while in jail before trial).

9

There is no clear authority from the Eighth Circuit involving an access-to-the-courts claim raised by a pretrial detainee who elects to represent him in a state criminal case. Defendants did not raise this argument in support of their motion to dismiss. Additionally, based on Reller's filings and his state court criminal record, it is not clear whether Reller, in fact, waived his right to counsel. Thus, whether Reller forewent an opportunity for court-appointed counsel and the import of that decision on his access-to-the-courts claim are more appropriately addressed by way of a motion for summary judgment with a fully developed record and an opportunity for both parties to brief the issue.

Defendants argue that the right of access to the courts is limited to an inmate's ability to directly or collaterally attack his sentence or conditions of confinement. Docket 25 at 9–10. Because Reller's access-to-the-courts claim arises out his detention as a pretrial detainee, the case law defendants cite discussing a convicted prisoners' access-to-the-courts claim is not directly applicable. *See., e.g., Lewis*, 518 U.S. 343; *White*, 494 F.3d 677; *Cody v. Weber*, 256 F.3d 764 (8th Cir. 2001). As a pretrial detainee, Reller has a "right to meaningful access to courts and to judicial process." *Johnson-El*, 878 F.2d at 1052. And Reller has sufficiently alleged, at this stage of the proceedings, that he sustained an actual injury because of the alleged violation of this right. Docket 1 at 6, 11.

Defendants also argue that Reller's access-to-the-courts claim fails as a matter of law because "[i]nmates are not constitutionally entitled to unlimited free photocopies or unlimited free postage." Docket 35 at 3 (citations omitted).

10

But the cases on which defendants rely are factually and procedurally distinguishable. In *Cody v. Slykhuis*, No. Civ. 04-4169, 2006 WL 759683, at *1–2 (D.S.D. Mar. 23, 2006), the plaintiff, an inmate at the South Dakota State Penitentiary, challenged the policy providing that indigent inmates are permitted to charge $10.00 per month to their inmate trust account for photocopies, which, in turn, means that an indigent inmate may obtain 66 copies per month. In *Cody*, the parties had filed cross motions for summary judgment, so the court had the benefit of a full record, including all relevant components of all applicable policies, details regarding the documents the plaintiff was not permitted to copy, and various options available to an indigent inmate who had exceeded the allotted number of copies. *Id.* at *2. In *Blaise v. Fenn*, 48 F.3d 337, 339–41 (8th Cir. 1995), the Eighth Circuit considered whether the district court had properly granted summary judgment to the defendants on a claim by an Iowa inmate challenging a policy limiting the amount of postage indigent inmates were permitted to use for legal mail. The district court, as well as the Eighth Circuit, had the benefit of a complete record, including all provisions of the applicable policy and the permitted exceptions, as well as evidence regarding the purpose of the applicable policy. *Id.* at 338. The Eighth Circuit held that the policy in issue "comfortably meets the *Turner* [*v. Safley*, 482 U.S. 78 (1987)] standards." *Blaise*, 48 F.3d at 339–40.

Notably, in *Smith v. Erickson*, 884 F.2d 1108, 1111 (8th Cir. 1989), one of the cases on which defendants rely, the Eighth Circuit held that the district

court had erred in granting defendants' motion to dismiss for failure to state a claim. The Eighth Circuit summarized its holding:

> In this case, without any indication from the prison officials as to the governmental interest served, the district court concluded that the purpose of the challenged policies was to insure prison security, order, and discipline, which are accepted as legitimate interests. Without explicitly considering the "reasonableness" factors outlined in [*Turner v.*] *Safley*, the district court further concluded that the policies were within constitutional bounds and the complaint therefore failed to state a claim. We disagree.

*Id.* at 1110. The Eighth Circuit also recognized that while "prisoners have no right to unlimited free postage, . . . [i]t is indisputable that indigent inmates must be provided at state expense with the basic material necessary to draft legal documents and with stamps to mail them." *Id.* at 1111 (internal quotation marks omitted). For these reasons, defendants' motion to dismiss Reller's access-to-the-courts claim is denied.

### C.    Right to Send and Receive Mail Claim

Reller's First Amendment right to send and receive mail claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities for money damages survived § 1915A screening. Defendants argue that Reller fails to state a claim for violation of his right to receive mail because the right to send and receive mail may be limited by prison regulations reasonably related to legitimate penological interests. Docket 25 at 10–12.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822

12

(1974). This includes the "right to send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Eighth Circuit has applied *Turner*'s four-factor test to prison regulations regarding mail:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Thongvanh*, 17 F.3d at 259. This standard applies to both incoming and outgoing mail. *Id.* (citation omitted).

At the motion to dismiss stage, this Court lacks the factual record to properly conduct a *Turner* analysis. When considering a motion to dismiss, a court may only consider the factual allegations in the complaint and related documents. *Mattes*, 323 F.3d at 698 n.4. None of the documents this Court may properly consider at this stage include sufficient factual allegations for the Court to meaningfully weigh the *Turner* factors. *See generally* Docket 6; Docket 6-1; Docket 8; Docket 10-1; Docket 13; Docket 14.

In their supporting brief, defendants assert that Reller did not receive a letter and picture because "the contents contained nudity[.]" Docket 25 at 11. But none of the materials that are appropriate for the Court to consider at this stage contain any factual allegations regarding the content of the letter and

picture Reller did not receive. These allegations appear only in Exhibit 6 to the affidavit defendants submitted in support of their motion to dismiss. Docket 26-6. The Court cannot consider these materials without converting the motion to dismiss into a motion for summary judgment. Defendants also contend that that "[p]rohibiting nude photos in jail is a legitimate penological interest." Docket 25 at 11. Defendants offer arguments to support this assertion. *Id.* at 11–12. Similarly, defendants contend that control of contraband is a legitimate penological interest. *Id.* at 12.

The arguments in defendants' brief in support of their motion to dismiss are not based on factual allegations appropriate for the Court to accept as true when considering a Rule 12(b)(6) motion to dismiss. Thus, defendants' request that the Court weigh the *Turner* factors and dismiss Reller's mail claims at this stage of the proceedings is denied. *See Braun v. Walz*, No. 20-333 (DSD/BRT), 2021 WL 1171693, at *3–4 (D. Minn. Mar. 29, 2021) (denying defendants' motion to dismiss a prisoner's First Amendment claim arising out of the denial of certain publications because the claims "cannot be properly evaluated . . . under *Turner* because it is a 'fact-intensive universe' that requires a developed factual record." (quoting *Holloway v. Magness*, 666 F.3d 1076, 1079 (8th Cir. 2021)); *Mason v. Johnston*, No. 19-CV-2597 (JRT/KMM), 2020 WL 7133201, at *12 (D. Minn. July 27, 2020), *report and recommendation adopted*, 2020 WL 5835223 (D. Minn. Sept. 30, 2020) (explaining that a *Turner*-type analysis requires a developed factual record that is not available at the motion to dismiss stage); *Beaulieu v. Ludeman*, No. 07-CV-1535 (JMR/JSM), 2008 WL

2498241, at *20 (D. Minn. June 18, 2008) (recognizing that analyzing the *Turner* factors at the motion-to-dismiss stage is premature).

### D.    Retaliation Claim

Reller's First Amendment retaliation claim against Welch, Yantis, Anderson, Houston, and Mueller in their individual capacities for money damages survived § 1915A screening. Docket 17 at 17–18, 34. "[T]he First Amendment 'prohibits government officials from subjecting individuals to "retaliatory actions" after the fact for having engaged in protected speech.'" *Aldridge v. City of St. Louis*, 75 F.4th 895, 898 (8th Cir. 2023) (quoting *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022)). To state a First Amendment retaliation claim, a plaintiff must first show that he engaged in protected First Amendment activity. *Id.* Next, a plaintiff must allege that defendants "took [an] adverse action . . . that would chill a person of ordinary firmness from continuing in the [protected] activity." *Id.* at 899 (alterations in original) (internal quotation marks omitted) (quoting *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023)). Finally, a plaintiff must show that defendants "would not have taken the adverse action but for harboring 'retaliatory animus' against [him] because of his exercise of his First Amendment rights." *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022) (citing *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)).

Reller alleges that Welch, Yantis, Anderson, Houston, and Mueller denied him legal books because he filed this lawsuit. Docket 8 at 1; Docket 10-1 at 55–56. He also alleges that defendants denied him legal copies in retaliation for

15

attempting to enforce his rights. Docket 10-1 at 47–49. Defendants contend that this claim should be dismissed because they did not have notice of this lawsuit until they were served, which was nearly a year after the alleged retaliatory conduct. Docket 25 at 13. Defendants also contend that the alleged "adverse action," denying a package and refusing to make copies, was not retaliatory. *Id.*

On April 18, 2024, Reller submitted a grievance stating that he intended to file a federal complaint for conspiracy to violate his civil rights. Docket 10-1 at 14. His complaint is dated April 24, 2024, and was mailed in an envelope that was postmarked on April 29, 2024. Docket 1 at 11. Giving Reller the benefit of all reasonable inferences, he has sufficiently alleged that defendants were aware, at least, of his plans to file a lawsuit. *See Lamar v. Payne*, 111 F.4th 902, 907–08 (8th Cir. 2024) (considering a prisoner's retaliation claim following threats to sue prison officials). It is also reasonable to infer that six days later, when Reller submitted an envelope addressed to the "Clerk of Courts Office U.S. District Court," defendants were aware that Reller had in fact commenced a federal lawsuit against them. *See* Docket 1 at 12. Just a few days later, Reller was denied a package containing legal books. Docket 10-1 at 55. The Eighth Circuit has recognized that at the motion to dismiss stage, a temporal relationship between protected activities and adverse action may support a circumstantial claim of retaliatory action in the First Amendment context. *L.L. Nelson Enters., Inc. v. Cnty. of St. Louis*, 673 F.3d 799, 809 (8th Cir. 2012). Because of the close temporal relationship between the

16

commencement of this lawsuit and the denial of a package containing legal books, coupled with Reller's allegations that defendants' actions were retaliatory, Reller has stated a viable claim for retaliation.

Reller also alleges that defendants misinterpreted and misapplied the provisions of the inmate handbook regarding access to the courts. Docket 6. According to Reller, the handbook states only that blank forms will not be notarized. *Id.* While the inmate handbook states that "inmate-generated documents for legal purposes" will be copied, it does not state that blank forms will not be copied. Docket 6-1 at 1. Reller's allegations that defendants "quote policy that isn't policy[,]" if true, provides further support evidence supporting defendants acted with a retaliatory motive. Accordingly, defendants' motion to dismiss Reller's retaliation claim is denied.

### E.    Fourth Amendment Claim

Reller's Fourth Amendment claims against Welch, Yantis, Houston, Mueller, and Pennington County in their individual and official capacities for money damages survived § 1915A screening. Docket 17 at 18–20, 34. Reller asserts that requiring him to "fill out [his] motions or subpoenas prior to having them copied as doing so would break the confidential matters of [his] legal motions and proceedings [he is] filing to the courts[.]" Docket 10 at 26; *see also* Docket 13 at 1 (alleging that "the Jail illegally reads [his] legal copies"); Docket 13 at 2 (claiming "its [sic] illegal for you to read any of my documents before copying them"); Docket 13 at 8 (referencing "breaking [his] confidentiality with the courts"). Reller's allegations that defendants read his

17

court filings before copying do not state a claim for violating the Fourth Amendment.

The Eighth Circuit has held that a pretrial detainee "ha[s] no legitimate expectation of privacy to the papers in his cell." *United States v. Hogan*, 539 F.3d 916, 924 (8th Cir. 2008). Courts consistently reject prisoners' claims that their Fourth Amendment rights have been violated when they provide legal documents to prison officials for copying and filing. *See, e.g., Powell v. Laurie*, No. 17-3031-SAC-DJW, 2017 WL 2876873, at *4 (D. Kan. July 6, 2017); *Christensen v. Braithwaite*, No. 2:17-CV-1123 CW, 2021 WL 4502837, at *5 n.7 (D. Utah Oct. 1, 2021); *Frazier v. Zavaras*, No. 10-cv-02534-CMA-KMT, 2011 WL 4537001, at *6–7 (D. Col. Sept. 30, 2011). In *Gawlik v. Quiros*, the court dismissed a prisoner's claim that prison officials violated his Fourth Amendment right to privacy by reading his legal documents because "[i]n the prison context, the Fourth Amendment affords only a limited right to *bodily* privacy." No. 3:23-CV-722(OAW), 2024 WL 4819249, at *10 (D. Conn. Nov. 18, 2024); *see also Davis v. Buffardi*, No. 0:01CV0285(GLS/GJD), 2005 WL 1174088, at *4 (N.D.N.Y. May 4, 2005) ("Prisoners have limited rights to privacy, and Defendant Nealon's purported reading of Plaintiff Davis's legal materials, without more, does not state a constitutional claim."). Similarly, in *Bell v. Crooks*, the court dismissed a prisoner's claim that his Fourth Amendment rights were violated when a prison official possessed the prisoner's legal papers copied for filing because "[p]risoners have no legitimate

18

expectation of privacy in their cells or in their possessions." No. 2:10-3244-HFF-BHH, 2011 WL 5403245, at *3 (D.S.C. Mar. 10, 2021).

Reller's Fourth Amendment claim is premised upon his assumption that legal documents he mails to a court for filing are confidential or privileged. Docket 10-1 at 15, 26, 36, 39–43, 51; Docket 13 at 2, 8–9, 29. But that is not the law. Documents filed in a court case are public. *Bell*, 2011 WL 5403245, at *3; *see also Moore v. Rowley*, 126 F. App'x 759, 760 (8th Cir. 2005) (per curiam) (holding that a prisoner has no constitutional right to have his bankruptcy petition mailed without being inspected first). "Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)). Reller does not allege that defendants opened or read any correspondence to or from an attorney. *See generally* Docket 6; Docket 6-1; Docket 8; Docket 10-1; Docket 13; Docket 14. Accordingly, Reller has no legitimate expectation of privacy in the contents of the legal filings he alleges defendants read. Defendants' motion to dismiss Reller's Fourth Amendment claim for failure to state a claim is granted.

## F.    Fourteenth Amendment Conditions-of-Confinement Claims

Reller's Fourteenth Amendment conditions-of-confinement claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County in their individual and official capacities for money damages survived § 1915A screening. Docket 17 at 22–24, 34. Because Reller was a pretrial detainee, his

19

claims for cruel and unusual punishment are analyzed under the Fourteenth Amendment, rather than the Eighth Amendment. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007); *see also Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (stating that a pretrial detainee's conditions-of-confinement claims are analyzed under the Fourteenth Amendment's due process protections).

The Supreme Court has explained that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law[.]" *Bell*, 441 U.S. at 535. When considering a pretrial detainee's conditions-of-confinement claim, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Id.* In *Bell*, the Supreme Court explained that:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."

*Id.* at 538–39 (alteration in original) (internal citation and footnote omitted) (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963)). According to the Eighth Circuit, there are two ways to determine whether a restriction or condition rises to the level of punishment. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020). First, a plaintiff can show that the restriction or condition is intentionally punitive. *Id.* at 907. Second, "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the [restrictions] were not reasonably related to a legitimate

20

governmental purpose or were excessive in relation to that purpose." *Id.* (citing *Bell*, 441 U.S. at 538–39). "If [restrictions] are found to be arbitrary or excessive, it is permissible to 'infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.'" *Id.* (quoting *Bell*, 441 U.S. at 539).

Here, Reller claims that defendants "punish[ed] [him] cruel[ly] and unusually by making [him] write [his] motions 5x instead of simply copying them all of this is because [he is] indigent." Docket 10 at 1; *see also* Docket 10-1 at 6, 47–50. He alleges that the intention was to punish him. Docket 10 at 1. Requiring Reller to handwrite five copies of his motions could be viewed as intentionally punitive or arbitrary and excessive compared to any legitimate governmental purpose. Moreover, as the Court has previously noted, at this stage of the proceedings, the record does not include sufficient facts for the Court to consider the legitimacy of the governmental purpose underlying the defendants' actions.

In their supporting memorandum, defendants assert that "[t]here is legitimate governmental interest in failing to provide unlimited photocopies for inmates[.] . . . It preserves jail resources and minimizes expenses." Docket 25 at 15. But at this stage of the proceedings, the Court cannot consider arguments in defendants' supporting memorandum outlining the purported governmental interests supporting defendants' actions. Moreover, Reller does not allege that he is entitled to unlimited photocopies. Rather, Reller contends

21

only that he should be permitted a sufficient number of photocopies to serve his motions.

Finally, the Court finds that defendants' reliance on *Cody,* 2006 WL 759683, in support of their motion to dismiss Reller's conditions-of-confinement claim is misplaced. In *Cody*, the court considered only whether the South Dakota State Penitentiary's policy limiting indigent inmates to 66 copies per month violates a convicted prisoner's right to access the courts. *Id.* at *2–3. The court did not consider whether refusing to make photocopies for a pretrial detainee can rise to the level of "punishment" and violate the Fourteenth Amendment. Accepting Reller's allegations as true, which this Court must do at this stage of the proceedings, he has sufficiently alleged a claim for violation of his Fourteenth Amendment due process rights. Defendants' motion to dismiss Reller's Fourteenth Amendment conditions-of-confinement claims is denied.

### G.    Reller's Fourteenth Amendment Equal Protection Claims

Reller's Fourteenth Amendment equal protection claims against Welch, Yantis, Anderson, Houston, Mueller, and Pennington Count in their individual and official capacities for money damage survived § 1915A screening. Docket 17 at 25–27, 34.

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 984 (8th Cir. 2004) (quoting *Rouse v. Benson,* 193 F.3d 936, 942 (8th Cir. 1999)). For a prisoner to

prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008) (citations and internal quotation marks omitted). Defendants argue that Reller's equal protection claims should be dismissed because Reller does not allege that he "was treated differently than similarly situated inmates, that the difference in treatment was based on a suspect class o[r] fundamental right or that the difference in treatment was motivated by intentional or purposeful discrimination." Docket 25 at 16. The Court agrees that Reller's filings fail to state an equal protection suspect classification or fundamental right claim. But the Court must also consider whether Reller has pled a class-of-one equal protection claim.

The Supreme Court recognized a class-of-one equal protection claim in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). The Eighth Circuit has applied the class-of-one analysis to a prison setting. *Nolan v. Thompson*, 521 F.3d 983, 989–90 (8th Cir. 2008). In *Nolan*, because the plaintiff had not alleged he was a member of a protected class or that his fundamental rights had been violated, the court found he had to show that defendants "systematically and 'intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Id.* at 989–90 (quoting *Olech*, 528 U.S. at 564). The plaintiff must "provide a specific and detailed account of the nature of the preferred treatment

23

of the favored class[.]" *Id.* at 990 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214–15 (10th Cir. 2004)).

Defendants contend that Reller fails to state a class-of-one equal protection claim "because he fails to identify any identical or comparable persons who were treated more favorably." Docket 25 at 17. The Court disagrees. Reller alleges that he has been denied his "indigent trial tools" in violation of *Britt v. North Carolina*, 404 U.S. 226 (1971). Docket 10 at 1; Docket 10-1 at 47–50. In *Britt*, the Supreme Court noted that "Griffin v. Illinois [351 U.S. 12 (1956)] and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." 404 U.S. at 227. Reller also claims that all defendants denied him legal copies because he was indigent and chose to represent himself. Docket 10 at 1, 9–10.

Whether Reller will be able to come forward with admissible evidence to support these allegations and whether defendants will be able to demonstrate that there is a rational basis to treat requests for legal copies from indigent inmates differently from non-indigent inmates remains to be seen. When considering a motion to dismiss for failure to state a claim, the Court must assume that all the factual allegations in the complaint and related filings are true. Thus, Welch, Yantis, Anderson, Houston, and Mueller's motion to dismiss Reller's class-of-one equal protection claim is denied. Further, because Reller alleges that his requests for copies were denied in accordance with an

24

unconstitutional Pennington County Jail policy, *see* Docket 10-1 at 33, 39–42, 43–45, Pennington County's motion to dismiss Reller's class-of-one equal protection claim is denied.

### H.     Reller's State-Law Negligence Claim

Reller's state-law negligence clam against Welch, Yantis, Anderson, Houston, Mueller, and Pennington County for money damages survived § 1915A screening. Docket 17 at 28–29. Reller alleges that defendants acted negligently. Docket 6 at 1; Docket 10-1 at 38, 44–46; Docket 13 at 31. Defendants contend that Reller has not articulated any duty that was breached and again contend that there is no duty to provide unlimited photocopies. Docket 25 at 17; Docket 35 at 6. But Reller's filings could be liberally construed to allege that Pennington County Jail policy, as set forth in the inmate handbook, imposed on defendants a duty to provide Reller copies of his legal documents. Docket 6; Docket 6-1. Reller alleges that defendants refused to copy his legal documents, which adversely impacted his criminal case and prolonged his detention. Docket 10-1 at 34, 39, 44–45; Docket 13 at 9, 29, 31. Because these allegations are sufficient to state a negligence claim, defendants' motion to dismiss Reller's state-law negligence claim is denied.

## II.     Reller's Renewed Motions for Appointment of Counsel (Dockets 34 and 37)

When Reller responded to defendants' motion to dismiss, he requested that the Court appoint counsel to assist "gathering discovery material and the

25

proper way to do things." Docket 34 at 1.[2] Recently, Reller filed another motion for appointment of counsel. Docket 37. Reller states that he does not have access to the original complaint, exhibits, and supplemental records. Docket 34 at 1; Docket 37 at 1–2. The Court will direct the Clerk of Court to provide Reller an updated docket sheet and copies of the original complaint and the supplements the Court considered when screening Reller's complaint. Additionally, the Court will direct the Clerk of Court to provide Reller copies of the Local Rules of Practice and Federal Rules of Civil Procedure 26, 33, 34, 36, 37, and 56 to assist him in conducting discovery and moving for summary judgment if he chooses to do so.

After the Court screened Reller's complaint, Reller moved for appointment of counsel. Docket 19. The Court denied Reller's motion for appointment of counsel because Reller's filings demonstrate that he can adequately present his claims to the Court. Docket 21 at 3. There has not been any change in circumstances that causes the Court to revisit its previous ruling. Thus, Reller's motions for appointment of counsel, Dockets 34 and 37, are denied. The Court notes that Reller requested that the Court reconsider its order denying his motion for appointment of counsel because he wants to take depositions and otherwise needs assistance conducting discovery. Docket 22; *see also* Docket 37 at 5 (asserting that Reller "requires an attorney in order to

---

[2] Reller also requests that the Court consider his response as "maybe . . . a motion for summary judgment[.]" Docket 34 at 1. Reller's response does not comply with Federal Rule of Civil Procedure 56 or Local Rule 56.1. Thus, the Court declines to consider his response as a motion for summary judgment.

conduct depositions[]"). At this stage of the proceedings, Reller has not identified any specific factual disputes that may warrant depositions. If, after serving interrogatories, requests for production of documents, and/or requests for admissions, Reller is able to demonstrate otherwise, he may file another motion for appointment of counsel.

## III.    Conclusion

For the reasons discussed above, it is ORDERED:

1.    That defendants' motion to dismiss, Docket 24, is granted in part and denied in part. The Court grants defendants' motion to dismiss Reller's Fourth Amendment claim and denies defendants' motion to dismiss Reller's remaining claims.

2.    That defendants will answer the remaining claims in Reller's complaint within **14 days** of the date of this Order. *See* Fed. R. Civ. P. 12(b)(4)(A).

3.    That Reller's motions for appointment of counsel, Dockets 34 and 37, are denied.

4.    That's Reller's motion for an extension of time, Docket 37, is denied as moot.

5.    That the Clerk of Court will provide to Reller an updated docket sheet and a copy of Docket 1, Docket 6, Docket 6-1, Docket 8, Docket 10-1, Docket 13, and Docket 14.

27

6.     That the Clerk of Court will provide to Reller a copy of the Local Rules of Practice and Federal Rules of Civil Procedure 26, 33, 34, 36, 37, and 56.

Dated March 25, 2026.

BY THE COURT:

/s/ *Camela C. Theeler*

CAMELA C. THEELER
UNITED STATES DISTRICT JUDGE

28